The New York Catholic Protectory, Plaintiff, *v.* City of New York, Defendant.

Supreme Court, Special Term, Bronx County, November 12, 1940.

*Madigan & Madigan* [*Francis X. Madigan* of counsel], for the plaintiff.

*William C. Chanler, Corporation Counsel* [*Hyman W. Kehl* and *Randolph J. Hernandez* of counsel], for the defendant.

Hammer, J. This proceeding by plaintiff seeks the cancellation and removal as a cloud on title of certain taxes for the year 1937 on the real property of plaintiff in section 14 on the tax map of the borough of the Bronx, city of New York. The property was acquired in 1866, and subsequently was used as a bathing beach for the children in the plaintiff institution in connection with its activities until about 1914 when a sewer constructed by the city befouled the waters and ended the use for bathing. Prior to 1914 the land was exempted totally from taxes. From 1914 to 1936, inclusive, the land was taxed by the city and the taxes paid by plaintiff. This, plaintiff claims, was done through inadvertence. The evidence shows the land to be barren and marshy, and that no income or revenue was derived from it. Since 1914 it has been entirely vacant and its only use was that plaintiff as part of its activity in conducting its

institutional work removed its own ashes, rubbish and the residue and waste material of the farm and other work done by the children in their training at the institution and deposited same on this barren marsh land. Defendant on cross-examination showed some of the land was firm enough to provide a roadway for the dumping. Defendant's only evidence is that of the custom and rule of the department of sanitation for approximately thirty-eight years past to collect and remove from all charitable institutions not operated for profit all waste material offered at the premises without limitation or discrimination and without charge for collection and removal. The uncontradicted evidence, however, is that plaintiff as part of its own activity and not the city as part of its sanitation service did this removal and disposal work. Plaintiff did work which defendant's evidence shows plaintiff could have had done by the city for the asking. " The policy of the law is to construe statutes exempting property from taxation somewhat rigidly, and not to permit such exemption to be established by doubtful implication." (*People ex rel. Mizpah* v. *Burke*, 228 N. Y. 245, 247, 248.)

The statute invoked here is subdivision 6 of section 4 of the Tax Law. As applicable, it reads:

" The following property shall be exempt from taxation: * * *

" 6. The real property of a corporation or association organized exclusively for * * * charitable * * * for the enforcement of laws relating to children * * * or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes."

Buildings owned by the Young Women's Christian Association in which rooms were rented and activities carried on which yielded income, and adjoining land used as a tennis court, have been held exempt. (*Young Women's Christian Assn.* v. *City of New York*, 137 Misc. 321; affd., 227 App. Div. 742; *Young Women's Christian Assn.* v. *City of New York*, 144 Misc. 120; affd., 236 App. Div. 665.)

While the strict rule of construction of the exemption statute and of the facts claimed to make same applicable should be invoked, consideration should be accorded the evidence in the light of the purposes to be furthered by the exemptions granted. If the evidence shows the use to be in furtherance of the purposes encouraged and fostered by the exemption, an over-zealous adherence to strict construction should not be indulged to penalize the benevolent institution and thwart the performance of its charitable activities. (*St. Barbara's R. C. Church* v. *City of New York*, 243 App. Div. 371, 373, 374.) In applying the rule of construction to activities of plaintiff and its property used therein, we may consider that in 1866, by section 3 of chapter 647 of the Laws of 1866, it was pro-

vided that "The real and personal estate belonging to and used for the charitable purposes of said association [plaintiff] shall be exempt from taxation."

Plaintiff was incorporated by act of the New York State Legislature by chapter 448 of the Laws of 1863. Since then its charitable, benevolent and educational activities, and its care, custody and correctional influence with delinquents have been recognized as public in character by many legislative enactments and appropriations of public funds for its use in performing its functions and purposes. (See Laws of 1864, chaps. 401, 405; Laws of 1865, chaps. 641, 646; Laws of 1866, chaps. 647, 774; Laws of 1867, chaps, 428, 751; Laws of 1868, chap. 817; Laws of 1869, chap. 857; Laws of 1870, chap. 704; Laws of 1871, chaps. 83, 869; Laws of 1875, chap. 218; Laws of 1877, chap. 275; Laws of 1878, chap. 252; Laws of 1879, chap. 272; Laws of 1903, chap. 90.)

The purposes of plaintiff are the protection, care and maintenance of destitute children, and in addition thereto the correction of such of the wayward or delinquent who are intrusted to its care.

When the land in question, located on Westchester creek, half a mile from plaintiff's main lands, with its buildings and improvements, was used for summer bathing purposes by its children, undoubtedly that activity was part of the plaintiff's charitable purposes. That activity was ended by the city when it built its sewer and polluted the place of bathing. The only use left seemingly was that to which the plaintiff institution put the barren marshy land. It had the ashes of the coal used for heating and cooking and the refuse and waste matter of the children's instructional activities, such as farming, sent to and dumped upon the land, rendered otherwise useless by the city. A separated plot is, however, seldom granted exemption. In *People ex rel. Missionary Sisters of the Third Order of St. Francis* v. *Reilly* (85 App. Div. 71; affd., 178 N. Y. 609) exemption was denied to a plot separated from the institution merely by a road. The plot was used for the storage of lumber used in the improvement of the main plot. (See, also, *Young Women's Christian Assn.* v. *City of New York*, 217 App. Div. 406, 409; affd., 245 N. Y. 562.) There must be an " actual use, occupation and possession " for the specific tax-exempting purpose. (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126; *Village of Watkins Glen* v. *Hager*, 140 Misc. 816; affd., 234 App. Div. 904; *Matter of Town of Huntington* v. *Bradford*, 273 N. Y. 603.) It cannot be said that dumping ashes and getting rid of refuse was one of the objectives of the plaintiff corporation especially when done at a separated plot one-half mile distant from the plaintiff's institution, although other means for such disposal

were available, such as incineration and other disposition upon the main grounds or disposal through the city's department of sanitation. That the plaintiff was continuously taxed and paid taxes from 1914 to 1936 is significant of the understanding of plaintiff and the taxing authorities that plaintiff's use during that period, the same being that claimed as ground for exemption here for 1937, did not entitle plaintiff to tax exemption. In *People ex rel. Trustees of Masonic Hall & Asylum Fund* v. *Miller* (279 N. Y. 137), continued exemption was based in part upon a similar long period of tax exemption as a " most significant " practical construction of the statute and use. The evidence does not warrant a finding that the property in question was used exclusively for carrying out one or more of the purposes of the institution. It follows that defendant city is entitled to judgment dismissing plaintiff's complaint upon the merits. At the city's insistence it may also have costs. Submit decision and judgment on notice.